**Dennis DUNN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–89–291–CR.**

Court of Appeals of Texas,
Eastland.

Jan. 17, 1991.

Publication Ordered Feb. 21, 1991.

Discretionary Review Refused
May 15, 1991.

Don Richard, Big Spring, for appellant.

Rick Hamby, Dist. Atty., Big Spring, for appellee.

OPINION

McCLOUD, Chief Justice.

The jury found appellant guilty of voluntary manslaughter and assessed his punishment at confinement for 16 years and 1 day.

The record reflects that on April 12, 1988, appellant, a Big Spring Police Officer, shot and killed his wife while the parties were arguing and "wrestling" over a gun. Appellant contended that the shooting was an accident. The sufficiency of the evidence is not challenged.

Appellant argues that the trial court erred in permitting, over timely and proper objection, evidence of two extraneous acts. We agree. One of the extraneous acts involved an incident in August of 1987 when appellant purportedly pointed a rifle or shotgun at a teenager who was stopped at a stop sign. The other event also occurred in August of 1987 when appellant, while attending the police academy, injured a fellow rookie classmate during a training exercise.

The State's attorney argued to the trial court that the evidence of the extraneous acts was admissible because "voluntary manslaughter ... hinges upon his temper ... his temperament is the lynch pin by which the charge of voluntary manslaughter hangs, his passion and his temper."

The trial court stated that the reason for admitting the evidence of the extraneous acts was that appellant had "already testif[ied] that he had a normal temper as any other person. For impeachment purposes I am going to allow it."

Kathy Stam, the deceased's cousin, testified that in August of 1987, while she was riding in a car with appellant and his wife, appellant stopped at a stop sign. A young teenage boy was driving a car just in front of appellant. As the young boy drove off from the stop sign, appellant pulled up beside him and took a rifle or shotgun that was lying on the floor of the car and pointed the gun at the teenager. Appellant told his wife to roll the window down; and his wife, who was crying, said that she was not going to roll the window down. Appellant

told his wife to roll it down or he would blow it out. Appellant's wife asked appellant to please not do that. Stam stated that appellant then put the gun back and started laughing like it was a big joke.

Ronald Ray Harvell, who attended the police academy with appellant, testified regarding an incident that occurred in August of 1987 during a training exercise. Harvell testified that they were learning how to stop a vehicle, to take the subject to the rear of the vehicle, to place the subject's hands on the car, and to then frisk the subject for weapons. A fellow classmate, Lupe Rodriquez, was acting as the driver of a subject automobile. Appellant took Rodriquez to the back of the car. While frisking the classmate, appellant held a weapon, armed with blanks, pointed at the center of Rodriquez' back. As part of the drill, Rodriquez turned and grabbed appellant's weapon. Harvell stated that, when this happened, appellant fired point-blank at Rodriquez who sustained powder burns as a result of appellant's actions. Harvell stated that, when he questioned appellant about the event, appellant stated that it was just a "natural act, reaction."

TEX.R.CRIM.EVID. 404 provides in part:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. *Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same....*

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is give in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction. (Emphasis added)

Appellant did not introduce any evidence during his direct examination that he was a person of moderate temper.[1] The issue of appellant's temper came up during cross-examination by the prosecutor. The record reflects the following questions by the prosecutor and appellant's answers:

Q: What sort of temper do you have?

A: I don't have a quick temper, moderate.

Q: Would you say when you are drinking your temper is less than moderate?

A: My temper remains moderate at all times, unless someone threatens my family, wife or kids, that's the only time it is not moderate.

This testimony was elicited immediately before the trial court's ruling that the evidence of the extraneous acts would be admitted for impeachment purposes since appellant had testified that he "had a normal temper." In discussing Rule 404, it is stated in 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1492 (Texas Practice 3d ed. Supp.1990):

Criminal Rule 404(a)(1) is in accord with a well-recognized exception to the rule against the use of character evidence for this purpose and is consistent with the prior criminal practice of limiting the evidence to a "pertinent" trait, i.e., one that relates to a trait involved in the offense charged or a defense raised.

Presumably, the appellate courts will continue to carefully scrutinize attempts by the prosecution to open the door as to the defendant's bad character by attempting to get the defendant to inject evidence of his good character during cross-examination. The Court of Criminal Appeals has held that the state can-

---

1. The court in *Preston v. State,* 769 S.W.2d 375 (Tex.App.—Fort Worth 1989, pet'n ref'd), points out that under Rule 404(a)(1) the accused, but not the State, may initially offer evidence of a pertinent trait of the accused's character. The prosecution may "rebut" the evidence offered by the accused.

**954**

not rely on its own questioning as an invitation to rebuttal.

See *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.1980); *Hatley v. State*, 533 S.W.2d 27 (Tex.Cr.App.1976); *Posey v. State*, 738 S.W.2d 321 (Tex.App.—Dallas 1987, pet'n ref'd).

The trial court erred in admitting the extraneous acts for impeachment purposes. We find no other exception permitting the evidence. See *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). We disagree with the State that the evidence was admissible under TEX.PENAL CODE ANN. § 19.06 (Vernon 1989). These two extraneous acts, which occurred in August 1987, were neither relevant facts "surrounding the killing and the previous relationship existing between the accused and the deceased" nor acts relevant to show "the condition of the mind of the accused at the time of the offense." Section 19.06 has no effect on the scope of admissible evidence. *Purtell v. State*, 761 S.W.2d 360 (Tex.Cr.App.1988). Appellant's prior acts of immoderate temper were not an essential element of the charge and, therefore, not admissible under TEX.R.CRIM.EVID. 405. See *Purtell v. State*, supra.

Recently, the Court of Criminal Appeals in *Ex parte Welborn*, 785 S.W.2d 391 (Tex. Cr.App.1990), again stated the Court's concern that an accused shall not be tried for some collateral crime or for being a criminal generally. After reviewing the entire record, we cannot determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2).

The judgment of conviction is reversed, and the cause is remanded to the trial court.