**810-15**

ORIGINAL

CASE NO. 12-14-00189-CR
In The
Court of Appeals
For The
Twelfth Supreme Judicial District of Texas


**Tracy Ray Hass**

**V.**

**The State of Texas**

RECEIVED IN
COURT OF CRIMINAL APPEALS
1 7 2015
bel Acosta, Clerk

**Appeal in Case No. 061728**

Bring Forth This Petition

REC'D IN COURT OF APPEALS
12th Court of Appeals District

AUG 1 2015

TYLER TEXAS
CATHY S. LUSK, CLERK

Petition for Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS
AUG 19 2015
Abel Acosta, Clerk

Petition for Discretionary Review

1

Shipman V. State 604 SW 2d. 182,185 Tex.Crim.App 1980 stating that state may not rely on its own questioning to get collateral matters, extraneous offenses, and bad acts that would otherwise be inadmissible...
(Prejudicial effect was the only proof the District Attorney relied on.)

Texas Rules of Evidence Rule 404 (b) 403
Generally, evidence of an extraneous offense is not admissible during the guilt, innocence phase of trial. See Abnor v. State 871 s.w.2d-726, 738 Tex crim. app 1994...
For extraneous offense evidence to be admissible under 404, the evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in formity with character. See Santellan v. State 939 s.w. 2d 155, 167 Tex. Crim. App. 1997 holding that rule 404b objection entails a Relevancy analysis even when not clearly articulated...

5th Amendment to U.S. Const.
Nor shall any person be subject for the same offense to be twice put in jeopardy...Nor shall be compelled in any criminal case to be a witness against himself. Nor be deprived of life, liberty or property without due process of law.

4th Search and Seizures...No warrants shall issue but upon probable cause. Section 1 of 14th amendment, declares him a citizen of the U.S. and promises that no state
shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States of America.

Furthermore the Appellant will show the court did error in not suppressing evidence seized as a result of an illegal arrest.

Address to the CAll by Niegbbors. To Truck pulling Trailer & cAr
IS
2325 STUDibAker Rd
Pilot Grove Tx –

On January 15, 2012 at 2:13 pm a call was received to Grayson County Dispatch, (Check dispatch log) about a white truck pulling a trailer and a car on an abandoned property. When the officer went to that address the officer found nothing out of place. After driving around, the officer found a damaged gate at a different location and address. He entered the property and investigated the premises, walked about 400 yards up the road and searched finding about 30 vehicles, 2 houses and a shed...nothing more. That's unlawful entry. The officer took control of that property 14 hours after any call to the area was made. The officer went back; found a car stuck on the side of the road. The car that was stuck on the side of the road did not fit the description of one of the vehicles of earlier reported. 14 hours later still no confirmation of any wrong doing on this property. The officer in court testified he had no knowledge of any wrong doing or proof. He just knew a feeling. That does not constitute probable cause.

The officer put appellant in the cop car and searches the car that is stuck on the side of the road. There were no warrants.

Appellant goes to jail charge of theft and gets out on bond. Several weeks' later court put burglary of a building charge on appellant with $2000.00 bond. There was no proof that a burglary of a building took place. Also no proof of any physical evidence – no finger prints, foot prints, no witnesses, no DNA, and no finger prints on the property itself (by the gate). All evidence points more to possession of second hand stolen property than anything else. 4 Months After Arrest for theft. Then grayson County Put burg of A building,

3

There's not enough legal evidence to up hold the conviction of theft and burglary of a building.

If evidence is sufficient enough in one court it should be sufficient enough in a different court. Coleen Williams turned herself in May 9, 2012 on the charges of a burglary of a building and theft. Coleen Williams testified that appellant had nothing do with these offenses. Coleen Williams also testified that nothing was stolen or taken out of the buildings or property. By Ms. Williams coming forward of her free will and independently, the court believed her story and agreed to abandon the burglary of a building. In that being said, the burglary of a building was then placed on the appellant. Doesn't this fall under Brady Law? (See exhibits 1-4

1 – I could see the officer coming down the road a quarter of a mile away towards me. Ask yourself why would I wait for the officer to pull up directly behind Ms. Williams' car before I closed the trunk? To hide something?

2 – I walked to Ms. Williams' car from 3 driveways down from where she was stuck. So that puts me walking west to the car. That confuses the officer because the car is facing east. The officer asked me why is the car facing east if you came from an eastern location? I told the officer I didn't know and he would need to ask the person that was driving the car. Apparently this confuses the officer further or he was grabbing at straws to justify probable cause. I told the officer that she just walked over the hill, you can go ask her. I also told the officer that Ms. Williams had asked me to assist her in getting her car unstuck.

The officer saw the damaged gate on his first time to investigate. In his report he is making it look like the only time he saw the damaged gate is when Ms. Williams' car was stuck on the side of the road, and then using that as probable cause to search the car. The 4th Amendment was violated. There is a 14 hour time

4

difference, as well as Ms. Williams' car didn't fit any description of any vehicles earlier reported.

Why should I be punished for the lower courts errors?

The officer with his 10 years on the force should be able to Tell the Difference Between old markings on the Gate at the property where old Not New. He had NO Cause to enter property. And the property had NO Tresspassing Signs up.

The Officer should have read me my ~~for~~ miranda warnings Before any interigation. Which was an illegal interigation.

To go check and talk to Elwood – that's the person that picked me up earlier that day and took me to his house. David Hewitt aka Elwood. 3 driveways up from Ms. Williams' car.

3 – It took 3 men to unload the 2 motors out of the back seat – the officer, the owner of the property and the man that was driving the tow truck. Those 3 proceeded to load the items into the truck bed of property owners' vehicle and put back into the field where they had apparently come from. I have a hand that has been shattered and a metal plate with screws in my right knee. At the time I weighed about 150lbs. There is no possible way I could have lifted those motors and put them in the back seat of that car. Please look at the police videos.

4 – The gate that was all damaged was green in color with white paint scrapes on its damaged areas. The car that was stuck close to this gate in a ditch had no dents or damage to it of any kind and the car was a solid maroon paint.

5

5 – How can I be found guilty of a crime namely burglary of a building when no such crime happened? It was a charge put on the appellant because of his prior convictions.

There was no call in to dispatch on January 16TH 2012 at 2:13 am to an address in Pilot Grove TX of 2 automobiles – one pulling a trailer. The dispatch log sheet needs to be checked not the police report. Someone changed the time pm to an am time. This will show that the officers' word is in question. The officers' assumptions that car parts are stolen at night. According to Ms. Williams it was around 4:30 pm on January 15th when she was in the area and around the property getting the parts.

1.- Also the district attorney threatened Ms. Williams. The district attorney stated to Ms. Williams he needed to speak with her. Ms. Williams asked the district attorney if she was required to speak with him and he told her no. When she told him she had nothing to say to him then he apparently got upset and in front of myself and my attorney and made the comment "you'll wish you would have.". My attorney asked Ms. Williams if she heard the district attorney threaten her, yet chose to not bring that up in the court proceedings.

• - My attorney failed to bring up the burglary of a building.
• - My attorney did not attempt to lower the charge to possession of stolen property.
• - My attorney failed to address the officers' unlawful entry of the property.
That is ineffective assistance of counsel – David Zedler.

The district attorney could only present assumptions, accusations, theories but no facts.

6

I have medical conditions as well as mental including bipolar, ADHD, anxiety, and manic depression. Between my physical and mental limitations
I do receive a disability check. It is hard for me to stay still or focused and when my anxiety and mania are active it is impossible for me to "be still".

The officer should not be allowed to say anything just to justify his own actions. He is an officer – it doesn't mean he is always right just because he has a badge.

Ms. Williams' family owns wrecking yards. Her grandfathers business was located in McKinney, TX and was called Kanaday and Son Auto Salvage. She also worked at Millennium Auto located also in McKinney TX. She managed her place of employment and had her certifications for brakes, and tune ups. She also had her inspection license for the vehicle emissions testing. Her shop did some paint and body. Car parts of any kind in Ms. Williams' car would not seem strange or out of place to me giving these facts.

I went to court 2 years after Ms. Williams. Her case had already been disposed of.

I went to jail on January 16, 2012 and did not go to court until March 17, 2014.

The appellant prays that after review of this motion the Honorable Judges will overturn the conviction of the said charges

7

or give the lower court orders to render a new trial with instructions specifying that the court isn't allowed to mention the appellants priors and to suppress evidence.

Appellant

Tracy Ray Hass

*Tracy Ray Hass*

07/30/2015

Address:
Tracy Ray Hass 01918959
Segovia Unit
1201 El Cibolo Rd
Edinburg TX 78542

Right Tumb Print

To Whom It concerns:

My name is Coleen Williams. On March 17 of 2014 I was approached by the Grayson County district attorney. I was a witness for Mr. Tracy Ray Hass' trial. While talking with Mr. Hass and his attorney the district attorney asked if he could speak with me. I proceeded to ask him if I was required to and he told me no. I then told him I had nothing to say to him . Apparently it upset him because he made a threatening remark stating that I will wish I would have as he walked off. This was directly in front of Mr. Hass and his attorney. His attorney asked if I heard the implied threat and I told him yes. I didn't understand why it wasn't ever brought up in Mr. Hass' trial to the judge as that is sever misconduct on the district attorneys behalf. I do not appreciate being threatened in any manner or it being used as some kind of bully tactic .

Thank You,

Coleen A. Williams

# ACKNOWLEDGMENT

STATE OF OKLAHOMA )
)  ss.
COUNTY OF Bryan )

Before me, the undersigned, a Notary Public in and for said County and State, on this ___4th___ day of ___August___, 20 _15_, personally appeared __Coleen A Williams__ to me known to be the identical person ___ who executed the following described instrument ___, and acknowledged to me that __She__ executed the same as __her__ free and voluntary act and deed for the uses and purposes therein set forth.

WITNESS my hand and Seal the day and year last above written.

LARA L TOLBERT
Notary Public, State of Oklahoma
Commission # 10005868
My Commission Expires July 21, 2018

07-2F-19
My Commission Expires

NOTARY PUBLIC

2of2

REPORTER'S RECORD

TRIAL COURT CAUSE NO. 061729

VOLUME 1 OF 1 VOLUMES

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE DISTRICT COURT |
| VS. | * | 15TH JUDICIAL DISTRICT |
| COLEEN WILLIAMS | * | GRAYSON COUNTY, TEXAS |

---------------------------------

PLEA OF GUILTY

---------------------------------

On the 30th day of May, 2012 the following proceedings came on to be heard in the above entitled and numbered cause before the Honorable Jim Fallon, Judge Presiding, held in Sherman, Grayson County, Texas.

Proceedings reported by Case Catalyst machine shorthand.

COPY

CERTIFIED SHORTHAND REPORTER



May 30, 2012

(Open court, defendant present.)

THE COURT: This is cause number 61729 The State of Texas versus Coleen Williams.

Are you Mrs. Williams?

MRS. WILLIAMS: Yes.

THE COURT: Mrs. Williams is here in person with attorney. Is the State ready?

MR. SMITH: The State is ready, Your Honor. We move to abandon and withdraw count two, the burglary of a building. We will proceed on the state jail felony of theft of property of $1,500.00 to $20,000.00.

MR. FRITTS: Your Honor, with respect to the indictment the name of the defendant her first name is actually spelled C-o-l-e-e-n. Just one L. We are okay with their eliminating and changing the first name on the indictment. Her first name is pronounced the same way.

THE COURT: All right. I will have that changed on the indictment. With that is the Defense ready?

MR. FRITTS: We are, Your Honor.

THE COURT: Ma'am, with that it's my understanding that you worked out a plea agreement to resolve this case today. But before you enter that plea I need to go over some things with you. So would you raise your right hand for me?

(Witness complied.)

EXHIBIT (3) 10

record?

A. Coleen Williams.

Q. Mrs. Williams, prior to the Grand Jury proceedings on your co-defendant, Tracy Hass, you had not been arrested on this case?

A. Correct.

Q. And you may or may not know but you weren't even a suspect in this case; is that correct?

A. Correct.

Q. You showed up downstairs and you were a little bit insistent I guess would be the word that you have the right to testify at the Grand Jury regarding Mr. Hass's case? mAy 30 2012

A. Yes, I chose to testify.

Q. And people marched out and told you that you weren't subpoenaed and you didn't have to testify but you were insistent because you told them you knew information about this offense; correct?

A. Correct.

Q. When you got in there and you got done testifying the Grand Jury decided to indict you; fair enough?

A. Correct.

Q. So they indicted you?

THE COURT: We all make mistakes.

Q. They indicted you on this case based on the information for which you testified to in the Grand Jury; fair

enough?

A.    Fair enough.

(State's Ex. No. 2 marked.)

MR. SMITH:  I will move to offer State's two which is the offense report.  Basically my understanding that you want to accept responsibility for this by entering a no contest plea today because you want to take the benefit of the plea agreement that the State is offering you?

A.    Yes.

Q.    That is basically that we have agreed to cap your deal with probation and the judge could decide whether you get deferred or not?

A.    Yes.

Q.    Fair enough?

A.    Yes.

Q.    Do you want to take advantage of that deal and also you would agree based on the testimony that you presented and based on what Mr. Hass might say and what the offense report shows is there is a likelihood that a jury could come back and find you guilty anyway.  So you want to basically just dispose of it with a plea of no contest; is that fair?

A.    Yes.

Q.    Do you have any questions about anything we are doing?

A.    No.

# Summary of the Argument ①

The police officer seen the DAMAged gAte, the Gate Did Not have any Resent MArkings on it it was old, Very old craps and Dents where the DAmAged wAs done. Rust on the metal does not happen in a few days. The officer opened the Gate gAte and went into the property and searched it. He had No probAble cAuse to enter the property. Now 14 hrs later and still the officer didn't Do a Title Search To even get in touch with the owners of the property, or have a warrant, or permission to enter said property. There was No evidences to support ProbAble cuse to enter property, at the time the officer searched it. That was an Illegal search and trespassing, one the officers Parts.

I Told the officer that Under the sheet in the Bick yard was, car Parts. My mAranda rights, have not been Read to me, at this Time,

so the interrogation, the stolen property Is inadmissible beaure it was acquired through through an unconstitutional interrogation That ① Fruit of the poisonous Tree and ② Exclusionary Rule, Equal protection under Fourteenth Amendment.

due process of law states- A fundamental priniciple of fairness in all legal matters both civil and criminal especially in the courts. all legal procedures set by statute and court practice, including Notices of rights, must be followed for each individual

(2)

so that no prejudicial or unequal Treatment will result. While somewhat indefinite, the term can be gauged by it's Aim to Safeguard both private and public rights against unfairness

unreasonable search and seizure. Is when a search and seizure by a law enforcement officer without a search warrant and without probable cause to believe that evidence of a crime is present such a search or seizure is unconstitutional under the fourt Amendment Applied to the states by the Fourteenth Amendment and evidence obtained from the unlawful search may no be introduced In court.

( Check the vidio Audio) When I told the cop about miss Williams. that she Just walked over the hill, He did Nothing. After I was Arrested and on my way to the County Jail I told the Arresting officer Well would you Believe this I Bought the carts with a wallmart cart and some cash. So the officer get to pick and choose what parts he wants To leave out or put in his Report. Again the officer is Making it look Like it was part of the investigation to have Probable Cause. Before The Arrest.

● The Arresting Officer. Questioned me
~~to~~ Then after words said I have ~~probabcise~~ probable cuse
to believe a crime has been committed,

① By ~~searching~~ unlawful searching the property,
② and unlawful interrigation,

Then reads me <u>Miranda Rights</u>,
puts me in cop CAR.

Searches Miss williams Car,

If
~~Iff~~ the officer ~~had~~ ~~Probable cause~~ search
the property at Question,

When the officer ~~is~~ seen the Damaged Gate
and unlawfully entered it and took
Control of the property and found 30
in opred Auto on it And Nothing more.
If he had suspected foul play Then why
Didint he Do A title search and report
it to the owners, ~~Then~~ ~~it~~ ~~to~~ ~~the~~ ~~owner~~

All evidence the officer collected is
                              Inadmissable eveidence.
● ~~Trail Court Did~~ ERROR.

10 years on the Police force surely he could Tell ~~the damages~~, Difference Between old Danger and New Damages ~~~~ on the Gate.

Even the Owners said the gate was Damaged month earlier. When they came out January 16th 5:30 Am.

and as far as the Neighbors call ing in on Abandon property that the white pickup pulling a trail and a car, The officer said that the Neighbors said all the stexling goes on a night. why would they say when there is Nothing on the property But TRee's.

and ~~this~~ property that the stolen car parts come from the same Neighbor that called can't even see any thing at the property

The so called Neighbors cant even see into the property ~~~~ the Cop is not being Truthfull. ~~~~ The officer and the Lower Court are Not looking foo Justice But a win.

My Lawyer want send me the ~~cops~~ Dispatch call sheet, Or any of the paper work I have ask for, I need help.

My lawyer said he resigned from this case.

1. The court did error in Not surpressing evidences
2. ~~And~~ The court did error in Impeachment.
3. The Court did error in (Colatoral Crime) To Grand Jury.
4. Inifective Assistance of Consel
5. No Phyical Evedence To put the Accused on the property.
6. The Arresting officer Obtained Illeagal Evedence. To make probable Cause.

# NO. 12-14-00189-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRACY RAY HASS,*<br>*APPELLANT* | § | *APPEAL FROM THE 59TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *GRAYSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*[1]

Tracy Hass appeals his convictions for theft and burglary of a building. He raises two issues on appeal. We affirm.

## BACKGROUND

A Grayson County grand jury returned a two count indictment against Appellant that alleged he committed the offenses of theft and burglary of a building. Appellant pleaded "not guilty" to both counts and a jury trial was held. The jury found Appellant "guilty" of both offenses, but did not assess punishment. During the punishment phase of trial, Appellant pleaded "true" to the State's allegations in its notice of enhancement. The trial court found the allegations "true" and assessed punishment at ten years of imprisonment. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant contends that the trial court erred by not suppressing evidence that was seized as a result of an illegal arrest. Appellant's argument centers only on his arrest; he does not challenge the propriety of the arresting officer's initial encounter or his warrantless

---

[1] Pursuant to a docket equalization order issued by the Supreme Court of Texas on June 23, 2014, this appeal has been transferred to this Court from the Fifth Court of Appeals in Dallas, Texas.

search of the vehicle. Accordingly, we limit our discussion to the trial court's ruling only as it pertains to Appellant's arrest.

## Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion, which involves a bifurcated analysis. *See Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). We give almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo. *Delafuente*, 414 S.W.3d at 177.

When the trial court does not make explicit findings of fact, we view the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *State v. Baker*, No. 12-12-00092-CR, 2013 WL 5657649, at *2 (Tex. App.—Tyler 2013, pet. dism'd) (mem. op., not designated for publication). Thus, we will uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *Elizondo v. State*, 382 S.W.3d 389, 393–94 (Tex. Crim. App. 2012).

## Applicable Law

A warrantless arrest is unreasonable per se unless it fits into one of the "few specifically established and well delineated exceptions" under the Fourth Amendment. *See Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135, 124 L. Ed. 2d 334 (1993). One such exception is when an officer has probable cause to believe that an offense was committed in his presence. *See Amador*, 275 S.W.3d at 878; *see also* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West 2005) (officer may conduct warrantless arrest when offense committed within presence or view).

The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires consideration of the totality of the circumstances facing the arresting officer. *Amador*, 275 S.W.3d at 878. A determination of probable cause "requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*,

2

214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949)). An offense is deemed to have occurred within an officer's presence or view when any of the officer's senses afford him an awareness of its occurrence. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

Thus, the ultimate question is whether, at the moment of the arrest, facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). And while the arresting officer's subjective intent or motivations are not taken into account, the officer's training, knowledge, and experience may be considered in determining whether the totality of the circumstances shows probable cause to arrest. *See Wiede*, 214 S.W.3d at 25.

## Officer Testimony

The State called Sergeant Donald Bowling from the Grayson County Sheriff's Office to testify during the hearing on Appellant's motion to suppress. The record shows that Sergeant Bowling has been a certified peace officer in the State of Texas for over thirteen years. At the time of the hearing, Sergeant Bowling had been working for the sheriff's office for ten years. During this time, Sergeant Bowling investigated approximately fifty thefts. Based on his experience, he testified that most Grayson County thefts occur during the nighttime hours on unoccupied property, and automobile parts are commonly stolen.[2]

Sergeant Bowling testified that on January 16, 2012, he was dispatched to a location in Grayson County at 2:13 a.m. regarding suspicious vehicles on "abandoned" property. Bowling explained that the complaint was made by a neighbor who informed him that the vehicles consisted of a passenger car and a pickup truck hauling a trailer.

When Sergeant Bowling arrived at the location, the "abandoned" property was unoccupied, and at least thirty inoperable vehicles were on the land. The gate to the property was damaged and appeared to have been forcibly opened. However, Sergeant Bowling testified he did not see the passenger car or truck and trailer that had been reported. As a result, he left the location.

---

[2] The events in this case occurred during the early morning hours, but the parties and witnesses consistently referred to all events as occurring at "night."

3

At 5:40 a.m., Sergeant Bowling returned to the location and saw a passenger car high-centered on the edge of the roadway. The vehicle was approximately fifteen yards from the unoccupied property with the damaged gate. Sergeant Bowling testified that the trunk lid of the vehicle was open, but as he approached, Appellant walked around the vehicle and closed it. Sergeant Bowling explained that he believed Appellant's conduct was an effort to conceal what was inside the trunk of the vehicle. He further testified that Appellant seemed "very nervous," was unable to stand in one place, and was sweating profusely, despite the cool weather.

When Sergeant Bowling asked Appellant where he was coming from, Appellant told him that he was coming from his friend's house, but he did not know his friend's last name. Sergeant Bowling further testified that Appellant's explanation of where he was coming from and where he was going did not make sense because the vehicle was pointed eastward and the location where Appellant purportedly came from was east of the vehicle's location.

As he was standing next to the vehicle, Sergeant Bowling saw something heavy in the back seat that was covered by a white sheet or shower curtain. When he asked Appellant what was underneath the sheet, Appellant told Sergeant Bowling that it was automobile parts.[3] Sergeant Bowling testified that as he questioned Appellant, he became increasingly agitated and gave vague answers, stating that the automobile parts were purchased from a "friend." Believing that Appellant was in possession of stolen property, Sergeant Bowling arrested Appellant.

On cross examination, Sergeant Bowling testified that when he first arrived at the abandoned property, he had no "confirmation" that a theft had occurred. He also testified that he did not receive any additional information prior to seeing Appellant when he returned to the location later that morning.

## Discussion

Appellant contends that his arrest was unauthorized because the aforementioned facts are as consistent with innocent activity as they are with criminal activity. To support this contention, he cites *Amores v. State*, 816 S.W.2d 407 (Tex. Crim. App. 1991). But *Amores* is inapplicable because it did not involve an offense that was committed within the arresting officer's presence. *See Amores v. State*, 816 S.W.2d 407, 414 (Tex. Crim. App. 1991) ("Thus, article 14.01, which

---

[3] At trial, the victim testified that some of the automobile parts found inside Appellant's vehicle came from a storage building on the unoccupied property.

authorizes a warrantless arrest for an offense committed in the officer's presence, is inapplicable.").

Here, the record showed that Appellant was found in close proximity to unoccupied property with a vehicle that had automobile parts in its back seat. The record also showed that when Sergeant Bowling approached Appellant, he closed the trunk lid of his vehicle, and was nervous, vague, and agitated upon answering Sergeant Bowling's questions. These circumstances, when viewed in light of Sergeant Bowling's knowledge and experience that (1) most Grayson County thefts occur at night on unoccupied property, (2) automobile parts are commonly stolen, and (3) several inoperable vehicles and a damaged access gate were located on the property where these suspicious vehicles were seen, are sufficient to warrant a prudent person in believing that Appellant had committed or was committing an offense, namely theft. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(b); *Woodard*, 341 S.W.3d at 412. Because the record supports a finding of probable cause, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to suppress. *See Elizondo*, 382 S.W.3d at 393–94; *Amador*, 275 S.W.3d at 878. Accordingly, we overrule Appellant's first issue.

## ADMISSION OF EVIDENCE

In his second issue, Appellant contends that the trial court erred by admitting character evidence to rebut defense witness testimony that he lacked knowledge of the offense.

### Standard of Review

A trial court's ruling on the admissibility of extraneous offense evidence is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Id.* at 343–44; *Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003). If the trial court's ruling is correct on any theory of law applicable to its ruling, it will not be disturbed on appeal. *De La Paz*, 279 S.W.3d at 344.

### Applicable Law

Generally, evidence of an extraneous offense is not admissible during the guilt-innocence phase of trial. *See generally* TEX. R. EVID. 403, 404; *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994). However, such evidence may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

TEX. R. EVID. 404(b)(2). This list is illustrative and not exhaustive, because extraneous offense evidence may be admissible to rebut an affirmative defense or a defensive issue that negates an element of the charged crime. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

For extraneous offense evidence to be admissible under Rule 404, the evidence must be relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *See id.* at 220; *see also Santellan v. State*, 939 S.W.2d 155, 167 (Tex. Crim. App. 1997) (holding that Rule 404(b) objection entails a relevancy analysis even when not clearly articulated). Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. TEX. R. EVID. 401.

In determining whether evidence is relevant, it is important that courts examine the purpose for which the evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). There must be a direct or logical connection between the actual evidence and the proposition sought to be proved. *Id.* If the extraneous offense evidence is not relevant apart from supporting an inference of character conformity, it is absolutely inadmissible under Rule 404(b). *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990).

**The Defensive Theory**

During his case-in-chief, Appellant called Coleen Williams, his former girlfriend, to testify. The record shows that Williams testified during the grand jury proceedings that led to Appellant's indictment, and she pleaded guilty to committing the same theft for which Appellant was also charged. Williams explained that the reason she testified before the grand jury and the reason she was testifying at trial was because Appellant was "not involved and had no knowledge" of the offense.

Williams testified that the night before Appellant's arrest, she attended a party where she met a man named "Billy." The man told her that he owned property that had "some stuff [on it that] he was going to junk." Williams explained that at the time, she did not have regular employment and was "scrapping" and doing "odd-and-end jobs" to earn money. As a result, she purchased parts from Billy because she thought she could make money selling them.

Williams testified that when she made the purchase, the parts were already on a trailer attached to Billy's truck. While at the party, Williams loaded "her" vehicle with parts that were

in the trailer.[4] Williams testified that after she loaded the vehicle, she and Billy drove to property he purported to own. Williams drove her vehicle inside the property, and as she was driving out, made a turn that was too wide and "stuck" the vehicle on the side of the road.

Williams testified that Billy drove off, and she walked to the house where the party had taken place. Williams knew Appellant also had been at the party and sought his help to remove the vehicle from the ditch. She testified that she and Appellant walked to the vehicle's location, and Appellant told her he needed more help to move the vehicle. Upon hearing this, Williams walked to Appellant's mother's house to get help, and Appellant was arrested.[5]

On cross examination, the State sought to admit evidence of Appellant's prior convictions of theft and burglary. To support its contention that the evidence was admissible, the State argued that "he has done prior acts such as these and gone to prison for acts such as these." Thus, the State's argument continued, this evidence was necessary to rebut Appellant's defense of lack of intent and knowledge. Over defense counsel's objection, the trial court permitted cross examination regarding Appellant's prior convictions.

During cross examination, Williams confirmed that her testimony was meant to show that Appellant had no knowledge of what had occurred at the burglarized property, and that he had no intention of stealing anything. Thereafter, Williams confirmed she was not aware that Appellant was convicted of the offense of theft on May 18, 1984, and August 13, 2008, and the offense of burglary of a building on September 17, 1984, June 5, 1985, April 6, 1987, October 14, 1991, and June 13, 1996.

## Discussion

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). Appropriation of property is unlawful if it is without the owner's effective consent, or the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b)(1)–(2).

A person commits the offense of burglary if, without the effective consent of the owner, he enters a building (or any portion of the building) not then open to the public, with intent to

---

[4] Williams testified that she was in the process of purchasing the vehicle from Appellant, but he had not yet transferred the title.

[5] The record indicates that Appellant's mother lived several miles from the location where the vehicle was found.

7

commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). An individual may be guilty of burglary, even if he does not enter the premises, if he is acting with another in the commission of the offense. *See Powell v. State*, 194 S.W.3d 503, 506–07 (Tex. Crim. App. 2006).

Intent and knowledge are essential elements of theft and burglary. *See* TEX. PENAL CODE §§ 30.02, 31.03; *see also Walker v. State*, 539 S.W.2d 894, 896 (Tex. Crim. App. 1976) (essential element of theft is knowledge); *Worthington v. State*, 469 S.W.2d 182, 183 (Tex. Crim. App. 1971) (intent is essential element of theft); *Coleman v. State*, 832 S.W.2d 409, 413 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (essential element of burglary is intent).

Appellant contends that because the prior convictions are so remote in time, they served only as inadmissible character evidence, and failed to refute his lack of intent or knowledge. The relevancy of an extraneous offense for proof of intent is based on

> the doctrine of chances—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all.
>
> . . . .
>
> *It is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent. The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand.*
>
> Yet, in order to satisfy this demand, it is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance. . . . In short, there must be a similarity in the various instances in order to give them probative value[.]

*Plante v. State*, 692 S.W.2d 487, 491–93 (Tex. Crim. App. 1985) (citations omitted).

By eliciting Williams's testimony, Appellant raised the issue of whether he had the requisite *mens rea* to commit the charged crimes. Under the doctrine of chances, Appellant's prior convictions suggest it was more probable that Appellant knew the automobile parts in the vehicle were stolen than that he had innocent control over a vehicle containing automobile parts near a salvage yard during the early morning hours. *See Plante*, 692 S.W.2d at 491–43. Stated another way, the prior convictions suggest that Appellant's defense of having no knowledge that

the items in the vehicle were stolen was unlikely. As such, Appellant's prior convictions are logically connected to the State's purpose for introducing them—to rebut Appellant's assertion that he lacked any knowledge of or intent to commit theft or burglary. *See Layton*, 280 S.W.3d at 240.

We agree with Appellant's contention that his prior convictions are remote in time to the charged offense. However, remoteness does not affect the prior convictions' relevancy; it affects only their weight. *See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987); *Linder v. State*, 828 S.W.2d 290, 296–97 (Tex. App.—Houston [1st Dist.] 1992, pet. denied) ("[R]emoteness does not *per se* render an extraneous offense irrelevant."). A trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. But when no objection is made under Rule 403 in a context such as this, our review encompasses only relevancy. *See Johnston*, 145 S.W.3d at 220 (holding that if only Rule 404 is invoked, the only determination is whether evidence is relevant apart from proving character conformity).

After viewing the evidence and the purpose for which it was used, we conclude that Appellant's prior convictions are relevant to rebut his defensive theory. *See Casey*, 215 S.W.3d at 879. Moreover, Appellant's counsel did not make a Rule 403 objection. Therefore, the trial court did not abuse its discretion by permitting the admission of Appellant's prior convictions. *See De La Paz*, 279 S.W.3d at 343. Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's two issues, we *affirm* the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered May 29, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

MAY 29, 2015

NO. 12-14-00189-CR

**TRACY RAY HASS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 59th District Court
of Grayson County, Texas (Tr.Ct.No. 061728)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*